UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-20144-Civ-MORENO
MAGISTRATE JUDGE P. A. WHITE

JOCELYN CLERVIL,                    :

          Petitioner,               :

v.                                  :        REPORT OF
                                             MAGISTRATE JUDGE
WALTER A. McNEIL,[1]                :

          Respondent.               :
_____

Introduction

Jocelyn Clervil has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, challenging the constitutionality of his convictions for first degree murder and carrying a concealed firearm entered on a jury verdict in Miami-Dade County Circuit Court, case no. 98-22259.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

For its consideration of this petition (DE#1), the Court has the response of the state to an order to show cause with multiple exhibits (DE#s7-8), and the petitioner's reply (DE#15).

---

[1] Walter A. McNeil, has replaced James R. McDonough as Secretary of the Florida Department of Corrections, and is now the proper respondent in this proceeding. McNeil should, therefore, "automatically" be substituted as a party under Federal Rule of Civil Procedure 25(d)(1). The Clerk is directed to docket and change the designation of the Respondent.

The petitioner raises the following claims:

1.  He was denied effective assistance of counsel, where his lawyer failed to file and/or seek a hearing on a motion to suppress. (DE#1:6).

2.  He was denied effective assistance of counsel, where his lawyer failed to file a motion to suppress statements obtained in violation of the petitioner's <u>Miranda</u>[2] rights and in violation of the Vienna Convention on Consular Relations. (DE#1:7).

3.  His counsel, who was later the state prosecutor on his case, was operating under a conflict of interest. (DE#1:9).

4.  He was denied an evidentiary hearing to establish that the petitioner's interpreter did not take an oath as required by Florida criminal procedures. (DE#1:10).

5.  He was denied effective assistance of counsel, where his lawyer failed to properly insure that the court interpreters were properly sworn in as Creole interpreters. (DE#1:17).

6.  His due process rights were violated during *voir dire*, where prospective jurors responses to questions were prejudicial, impartial, and untruthful. (DE#1:18).

7.  He was denied effective assistance of counsel, where his lawyer failed to utilize the petitioner's peremptory challenges to strike certain jurors, improperly limited cross-examination of certain witnesses, and did not present a heat of passion defense. (DE#1:18).

---

[2]<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

2

8.   He was denied effective assistance of counsel, where his lawyer failed to:

   a.   use the remaining peremptory challenges to remove biased prospective jurors;

   b.   prepare for examination of witnesses;

   c.   investigate the evidence; and,

   d.   develop a heat of passion defense. (DE#1:19).

9.   He was denied effective assistance of counsel, where his lawyer ineffectively moved for a judgment of acquittal. (DE#1:20).

10.  He was denied effective assistance of counsel, where his lawyer failed and/or otherwise ineffectively moved for a new trial. (DE#1:20).

### Procedural History

The procedural history of the underlying state court convictions reveals as follows. The petitioner was charged by Indictment with the first degree murder of Tierney Ely, in violation of <u>Fla.Stat.</u> §§782.04(1) and 775.087 (Count 1), and carrying a concealed firearm, in violation of <u>Fla.Stat.</u> §790.01 (Count 2). (DE#8:Ex.B). He proceeded to trial, where he was found guilty as charged, following a jury verdict. (DE#8:Ex.C). He was adjudicated guilty and sentenced to a term of life imprisonment as to Count 1, and a concurrent five years in prison as to Count 2. (DE#8:Ex.D).

The petitioner appealed, raising the sole claim that the trial court erred in denying the defendant's requested special jury

instruction on heat of passion where the evidence supported such an instruction and citizen's arrest was the theory of defense. (DE#8:Ex.E). On September 14, 2005, the Third District Court of Appeal *per curiam* affirmed the petitioner's conviction and sentence. <u>Clervil v. State</u>, 911 So.2d 114 (Fla. 3 DCA 2005); (DE#8:Ex.G). Thus, the judgment of conviction became final, for purposes of the AEDPA's one year statute of limitations, at the latest on December 13, 2005, ninety days following the affirmance of the convictions and sentences on direct appeal.[3]

Over one month later, on January 23, 2006, the petitioner returned to the trial court, filing his first motion for postconviction relief pursuant to <u>Fla.R.Cr.P.</u> 3.850, raising multiple claims, including essentially the same claims raised in this federal habeas petition. (DE#8:Ex.H). After the state filed its response thereto (DE#8:Ex.I), the trial court entered a lengthy, detailed order, denying many of the claims, and ordering an evidentiary hearing regarding the petitioner's claims that he was denied effective assistance of counsel because his counsel was operating under an actual conflict of interest. (DE#8:Ex.K).  On August 25, 2006, an evidentiary hearing was held, and testimony taken from Attorney Leah Klein. (DE#8:Ex.L). At the conclusion of the hearing, the trial court denied the remaining claims on the finding that there was no actual conflict of interest because Attorney Klein had never been employed by the Public Defender, nor had she ever represented the petitioner. (DE#8:Ex.L:20-21). On

---

[3]For federal purposes, a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. <u>Griffith v. Kentucky</u>, 479 U.S. 314, 321, n.6 (1986); <u>accord</u>, <u>Bond v. Moore</u>, 309 F.3d 770 (11 Cir. 2002); <u>Coates v. Byrd</u>, 211 F.3d 1225 (11 Cir. 2000). Ordinarily, a petition for writ of certiorari must be filed within 90 days of the date of the entry of judgment, rather than the issuance of a mandate.  Supreme Court Rule 13.

September 6, 2006, the trial court entered an order denying the evidentiary hearing claims. (DE#8:Ex.M). On November 7, 2007, the denial of the petitioner's Rule 3.850 motion was *per curiam* affirmed without written opinion by the Third District Court of Appeal. Clervil v. State, 972 So.2d 188 (Fla. 3 DCA 2007)(table); (DE#8:Ex.R). Rehearing was denied on December 13, 2007. (DE#8:Ex.T). The mandate issued on January 4, 2008. (DE#8:Ex.U).

Less than one week later, on January 10, 2008, the petitioner came to this court filing this federal habeas corpus petition.[4] (DE#1:15). The respondent correctly concedes that this petition was filed within the one-year limitations period of 28 U.S.C. §2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Artuz v. Bennett, 531 U.S. 4 (2000) (pendency of properly-filed state postconviction proceedings tolls the AEDPA limitations period).

It is axiomatic that issues raised in a federal habeas corpus petition must have been fairly presented to the state courts and thereby exhausted prior to their consideration on the merits. Anderson v. Harless, 459 U.S. 4 (1982); Hutchins v. Wainwright, 715 F.2d 512 (11 Cir. 1983). Both the factual substance of a claim and the federal constitutional issue itself must have been expressly presented to the state courts to achieve exhaustion for purposes of federal habeas corpus review. Baldwin v. Reese, 541 U.S. 27 (2004); Gray v. Netherlands, 518 U.S. 152 (1996); Duncan v. Henry, 513 U.S. 364 (1995); Picard v. Connor, 404 U.S. 270 (1971). A petitioner is required to present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles

---

[4]See: Adams v. United States, 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

to the facts bearing upon [his] constitutional claim." <u>Picard v. Connor</u>, 404 U.S. 270-275-77 (1971).

Exhaustion requires that a claim be pursued in the state courts through the appellate process. <u>Leonard v. Wainwright</u>, 601 F.2d 807 (5 Cir. 1979). A petitioner is required to present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." <u>Picard v. Connor</u>, 404 U.S. 270-275-77 (1971). Exhaustion is ordinarily accomplished on direct appeal. If not, in Florida, it may be accomplished by the filing of a Rule 3.850 motion, and an appeal from its denial; <u>Leonard v. Wainwright</u>, 601 F.2d 807, 808 (5 Cir. 1979), or, in the case of a challenge to a sentence, by the filing of a Rule 3.800 motion, and an appeal from its denial. <u>See</u> <u>Caraballo v. State</u>, 805 So.2d 882 (Fla. 2 DCA 2001). A claim of ineffective assistance of appellate counsel must be raised by petition for writ of habeas corpus in the appropriate district court of appeal. <u>State v. Dist. Ct. of Appeal, First Dist.</u>, 569 So. 2d. 439, 442 n.1 (Fla. 1990). These principles will be discussed when relevant in connection with the petitioner's individual claims *infra*.

<u>Discussion of the Claims</u>

Turning to the merits of the claims raised in the collateral proceeding, Section 104(d) of the AEDPA [28 U.S.C. §2254(d)] sets out a significant new restriction upon the ability of federal courts to grant habeas corpus relief. It provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court

proceedings unless the claim --

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as deter-mined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In <u>Williams v. Taylor</u>, 529 U.S. 362 (1999), the Supreme Court interpreted this provision as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

As indicated in §2254(d), there are two distinct avenues for granting federal habeas relief. <u>See</u> <u>Hall v. Head</u>, 310 F.3d 683, 690 (11 Cir. 2002), <u>citing</u>, <u>Williams</u>, 529 U.S. at 404. First, relief may be available if the state court decision is "contrary to" clearly established United States Supreme Court precedent. For example, "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," the decision is contrary to Supreme Court precedent. <u>Id</u>., <u>quoting</u>, <u>Williams</u>, 529 U.S. at 405. Alternatively, "if the state court confronts a set of facts that are materially indistinguishable from a [relevant Supreme Court decision and] arrives at a result different" from that decision, such a result is also contrary to Supreme Court precedent. <u>Id</u>., <u>quoting</u>, <u>Williams</u>, 529 U.S. at 406.

Second, a petition for habeas relief may be granted if the state court decision involved an "unreasonable application" of Supreme Court precedent. <u>Id</u>. at 691. "A state-court decision that correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case" satisfies the "unreasonable application" clause of § 2254(d)(1). <u>Id</u>., <u>quoting</u>, <u>Williams</u>, 529 U.S. at 407-08. The proper inquiry is whether the state court applied federal law in an "objectively unreasonable" manner. <u>Williams</u>, at 409. Finally, §2254(d)(1) provides a measuring stick for federal habeas courts reviewing state court decisions. <u>Hall</u>, 310 F.3d at 683.  That measuring stick is "clearly established Federal law." 28 U.S.C. § 2254(d)(1). <u>Id</u>. In the habeas context, clearly established federal law "refers to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. <u>Id</u>., <u>citing</u>, <u>Williams</u>, 529 U.S. at 412. Further, §2254(e)(1) provides for a highly deferential standard of review for factual determinations made by a state court in that a state court's factual findings are presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. §2254(e)(1); <u>Putman v. Head</u>, 268 F.3d 1223, 1241 (11 Cir. 2001), <u>cert</u>. <u>denied</u>, ___ U.S. ___, (2002).

The Eleventh Circuit has stressed the importance of this new standard, stating that the AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." <u>Crawford v. Head</u>, 311 F.3d 1288, 1295 (11 Cir. 2002). Specifically, the AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." <u>Crawford</u>, <u>supra</u> at 1295, <u>quoting</u> <u>Bell v. Cone</u>, 535 U.S. 685 (2002).

In this habeas proceeding, the petitioner raises a multitude of claims arising from trial court errors and counsel's effectiveness. In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish: (1) deficient performance - that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice - but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668 (1984); Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000)(en banc). The standard is the same for claims of ineffective assistance on appeal. Matire v. Wainwright, 811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. Id. at 697; Waters v. Thomas, 46 F.3d 1506, 1510 (11 Cir. 1995). Prejudice in the sentencing context requires a showing that the sentence was increased due to counsel's error. Glover v. United States, 531 U.S. 198, 203-204 (2001).

The Eleventh Circuit reviews an attorney's performance with deference, and looks not for "what is prudent or appropriate, but only what is constitutionally compelled." Hardwick v. Crosby, 320 F.3d 1127, 1161 (11 Cir. 2003), citing Chandler v. United States, 218 F.3d 1305, 1313 (11 Cir. 2000) (en banc)(When assessing a lawyer's performance, "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment."). The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within the wide range of professionally competent assistance." Van Poyck v. Florida Dept. of Corrections, 290 F.3d 1318, 1322 (11

Cir.), cert. den'd,___ U.S. ___, 123 S.Ct. 70 (2002), quoting, Strickland v. Washington, supra at 690. Review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11th Cir. 1992).

In **claim one**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to file and/or seek a hearing on a motion to suppress. (DE#1:6). In support thereof, the petitioner maintains that counsel should have moved to suppress statements the petitioner made to a Miami-Dade County employee who fraudulently represented herself to be a police officer. (Id.).

First, regarding his allegation that his constitutional rights were violated because counsel failed to request or the petitioner was otherwise denied an evidentiary hearing on his "suppression issue," that claim is unexhausted and prospectively procedurally barred from review in this habeas proceeding. In his federal petition, the petitioner acknowledges that this claim, as worded, is unexhausted. (DE#1:6). As previously narrated in this Report, based upon the foregoing principles regarding exhaustion and procedural bar, this claim is unexhausted and prospectively procedurally barred from federal habeas corpus review, because the claim was not presented on direct appeal as it could and should have been.

In this case, however, dismissal of the petition to permit the

petitioner to exhaust the claim would be futile, as the petitioner's unexhausted claim is now incapable of exhaustion at the state level and would be procedurally barred under Florida law. The petitioner has already pursued a direct appeal and a Rule 3.850 motion in state court, which denial was appealed.[5] It is, therefore, apparent that any attempt to return to that forum to present his unexhausted claim would be futile.[6] Because there are no procedural avenues remaining available in Florida which would allow the petitioner to return to the state forum and exhaust the subject claim, it appears that the claim is likewise procedurally defaulted from federal review. See Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11 Cir. 1999)(holding that where state prisoner failed to raise a federal claim in state postconviction proceedings, and it is obvious that such unexhausted claim would now be procedurally barred due to a state-law procedural default, federal habeas court may foreclose petitioner's filing in state court); Collier v. Jones, 910 F.2d 770, 773 (11 Cir. 1990)(where dismissal to allow exhaustion of unexhausted claims would be futile due to state procedural bar, claims are procedurally barred in federal court as well); Parker v. Dugger, 876 F.2d 1470, 1477-78 (11 Cir. 1989)("plain statement" rule of Harris v. Reed, 489 U.S. 255 (1989), does not apply when a claim was never presented in state court).

---

[5]The subject claim cannot now be raised in a later Rule 3.850 motion because, except under limited circumstances not present here, Florida law bars successive Rule 3.850 motions. See Fla.R.Crim.P. 3.850(f). See also Moore v. State, 820 So.2d 199, 205 (Fla. 2002)(holding that a second or successive motion for postconviction relief can be denied on the ground that it is an abuse of process if there is no reason for failing to raise the issues in the previous motion).

[6]A procedural-default bar in federal court can arise in two ways: (1) when a petitioner raises a claim in state court and the state court correctly applies a procedural default principle of state law; or (2) when the petitioner never raised the claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred in state court. Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11 Cir. 1999). The latter is applicable here.

Since the petitioner has failed to demonstrate objective cause for the failure to properly raise the claim before the state courts and actual prejudice resulting from the error complained of, and has further failed to show that a fundamental miscarriage of justice would result from not considering the forfeited claim, the claim is procedurally barred in this federal proceeding. See Dretke v. Haley, 541 U.S. 386, 124 S.Ct. 1847 (2004). See also United States v. Frady, 456 U.S. 152, 168 (1982); Wainwright v. Sykes, 433 U.S. 72 (1977). To demonstrate a fundamental miscarriage of justice, the petitioner needs to establish that he is actually innocent of the subject crime for which he was convicted. See Glover v. Cain, 128 F.3d 900, 904 n. 5 (5 Cir. 1997). Even if the petitioner is somehow asserting that he is actually innocent, the actual innocence exception to the unreviewability of procedurally defaulted claims is applied only in the rarest of cases; see Dretke, 124 S.Ct. at 1852, and the petitioner has failed to meet the high standard.[7] See Bousley v. United States, 523 U.S. 614 (1998), quoting, Schlup v. Delo, 513 U.S. 298, 327-328 (1995). Accordingly, the petitioner is not entitled to federal habeas corpus review of the unexhausted claim. See O'Sullivan v. Boerckel, 526 U.S. 838, 848-49 (1999). See also Coleman v. Thompson, 501 U.S. 722, 750-51 (1991); United States

---

[7]Petitioner must demonstrate that "in light of all the evidence, 'it is more likely than not that no reasonable juror would have convicted him.'" Bousley v. United States, 523 U.S. 614, 623 (1998), quoting, Schlup v. Delo, 513 U.S. 298, 327-328 (1995). The Supreme Court emphasized that actual innocence means factual innocence, not mere legal insufficiency. Id. See also High v. Head, 209 F.3d 1257 (11 Cir. 2000); Lee v. Kemna, 213 F.3d 1037, 1039 (8 Cir. 2000); Lucidore v. New York State Div. of Parole, 209 F.3d 107 (2 Cir. 2000)(citing Schlup v. Delo, 513 U.S. 298, 299, (1995); Jones v. United States,153 F.3d 1305 (11 Cir. 1998)(holding that appellant must establish that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him). To be credible, a claim of actual innocence requires the petitioner to "support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." Schlup v. Delo, 513 U.S. at 324. All things considered, the evidence must undermine the Court's confidence in the outcome of the trial. Id. at 316. In this federal proceeding, the petitioner has come forward with no new reliable evidence to support any claim of actual innocence.

v. Frady, 456 U.S. 152, 168 (1982); Wainwright v. Sykes, 433 U.S. 72 (1977).

Moreover, it should also be noted that a claim arising from the court's failure to hold a full evidentiary hearing is not cognizable in a federal habeas petition. Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also presented. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Likewise, a state's interpretation of its own rules or statutes does not raise a federal constitutional issue unless it rises to a level of denial of fundamental due process. Wainwright v. Goode, 464 U.S. 78 (1983), reh'g denied, 465 U.S. 78 (1984). See also Redman v. Dugger, 866 F.2d 387 (11 Cir. 1989); Machin v. Wainwright, 758 F.2d 1431, 1433 (11 Cir. 1985); Carrizales v. Wainwright, 699 F.2d 1053 (11 Cir. 1983).

When a federal court considers whether habeas corpus is warranted, the decision is limited to whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. §2254; Rose v. Hodges, 423 U.S. 19, 21 (1975)(per curiam).  A state petitioner's right to an evidentiary hearing on a collateral motion is a question of state law.  Thus, to the extent that the petitioner claims that the trial court committed errors of state law, such claim is not cognizable in this federal habeas corpus petition, as asserted correctly by the respondent. Thus, the petitioner is entitled to no relief on his claim that counsel failed to seek an evidentiary hearing.

As previously stated, review of the record reveals that this precise claim arising from the failure of counsel to request an evidentiary hearing on a suppression motion was never presented to

the courts of Florida. However, the facts in support of the alternative argument raised in claim one, to-wit, that counsel was ineffective for failing to file a suppression motion, on the basis that statements made to a Miami-Dade County employee were obtained fraudulently, was exhausted in the petitioner's Rule 3.850 motion, and it appears is thus ripe for federal review.

The petitioner argues here, as he did in his Rule 3.850, that counsel was ineffective for failing to file a pretrial motion to suppress inculpatory statements he made to Miami-Dade Police Department receptionist, Bernadette Louis, after he entered the lobby of the police department and asked for assistance. (DE#1:6). According to the petitioner, he voluntarily went to the police department to report he had been involved in an altercation with the victim, Tierney Ely. (See DE#8:Ex.H:9-10). At that time, Louis began questioning the petitioner regarding the details of the shooting, which resulted in the petitioner providing inculpatory statements. (DE#8:Ex.H:10-11).

At trial, Louis testified that when the petitioner arrived at the police station, he began conversing with her in Creole, during which he explained about the problems he had with a woman who had recently left him. (T.439). After Louis asked the petitioner what he did, the petitioner stated that the woman had sent people to kill him, and that he had "knocked her down," meaning he had used a gun to kill the woman. (T.441).

The trial court summarily denied this claim, stating as follows in its written order:

> Counsel for Defendant was not ineffective based on
> the Defendant's allegations set out in ground one
> (1). The Defendant alleges that his Counsel was

14

ineffective for failing to file a pre-trial motion
to suppress the Defendant's statements to a
receptionist at the North Miami Police Department
after he entered the lobby of the police department
and asked for assistance. There was no basis upon
which to file a motion to suppress these statements
in good faith as the Defendant was neither in
custody nor was he subject to interrogation by a
law enforcement officer. In order to provide him
with the appropriate assistance, the receptionist
asked him questions in order to direct him to the
correct person or area of the department. He was
not the subject of a custodial interrogation.
Therefore, counsel was not ineffective on this
basis and the defendant's motion based in ground
one (1) is denied without further proceedings.

(DE#8:Ex.K:1).

It is axiomatic that under both federal and state law, <u>Miranda</u>
warnings are required only when an individual is undergoing
custodial interrogation. The Supreme Court defined "custodial
interrogation" as "questioning initiated by law enforcement officers
after a person has been taken into custody or otherwise deprived of
his freedom of action in any significant way." <u>Miranda</u>, 384 U.S. at
444. Determining whether a person is in custody for <u>Miranda</u> purposes
is based on how a reasonable person in the suspect's situation would
perceive his or her circumstances. The ultimate inquiry is whether
"a reasonable person placed in the same position would believe that
his or her freedom of action was curtailed to a degree associated
with actual arrest." <u>Ramirez v. State</u>, 739 So.2d 568, 573 (Fla.
1999).

The <u>Miranda</u> custody test involves two discrete inquiries:
first, what were the historical facts and circumstances surrounding
the interrogation; and second, given those circumstances, "would a
reasonable person have felt he or she was not at liberty to
terminate the interrogation and leave." <u>Thompson v. Keohane</u>, 516

15

U.S. 99, 112 (1995). The <u>Miranda</u> custody inquiry is an objective test that involves the consideration of four factors: "(1) the manner in which the police summon the suspect for questioning; (2) the purpose, place, and manner of the interrogation; (3) the extent to which the suspect is confronted with evidence of his or her guilt; and (4) whether the suspect is informed that he or she is free to leave the place of questioning." <u>Mansfield v. State</u>, 758 So.2d 636, 644 (Fla. 2000)(<u>quoting</u> <u>Ramirez</u>, 739 So.2d at 574).

In this case, the above factors weigh against a finding of custody. By the petitioner's own admissions, he went to the police department of his volition. He drove himself there, and entered the building, initiating a conversation with the receptionist. That the conversation occurred in the inherently coercive environment of the police department did not transform the otherwise non-custodial interrogation into a custodial one. <u>See</u> <u>Roman v. State</u>, 475 So.2d 1228, 1231-32 (Fla. 1985) (<u>citing</u> <u>Oregon v. Mathiason</u>, 429 U.S. 492 (1977)). In <u>Oregon</u>, the Supreme Court the Court found in relevant part that the defendant was not in custody "or otherwise deprived of his freedom of action in any significant way" when he "came voluntarily to the police station, where he was immediately informed that he was not under arrest." <u>Oregon</u>, 429 U.S. at 495.

Accordingly, the conversation between the petitioner and the receptionist wherein the petitioner provided information surrounding the murder of Ely did not violate the petitioner's <u>Miranda</u> rights. Since his statement was not unlawfully obtained, there was no legal basis upon which to move to suppress the statement. Consequently, trial counsel's performance cannot be deemed constitutionally ineffective for failing to file a motion to suppress in that there was no legal basis upon which to support a motion to suppress. There is no duty to raise issues which have little or no chance of

success. <u>See generally</u>, <u>Chandler v. Moore</u>, 240 F.3d 907, 917 (11 Cir. 2001)(counsel is not ineffective for failing to raise a non-meritorious objection); <u>Card v. Dugger</u>, 911 F.2d 1494, 1520 (11 Cir. 1990)(holding that appellate counsel is not required to raise meritless issues). Under these circumstances, the rejection of this claim in the state forum was neither contrary to nor an unreasonable application of established federal principles, and the result should not be disturbed. <u>See</u> 28 U.S.C.§2254(d). <u>See also</u> <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).

In **claim two**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to file a motion to suppress statements obtained in violation of the petitioner's <u>Miranda</u>[8] rights and in violation of the Vienna Convention on Consular Relations. (DE#1:7).

To the extent this claim is a mere reiteration of the arguments raised in relation to claim one above arising from counsel's failure to filed a pretrial motion to suppress, that claim should be denied for the reasons set forth above.

The petitioner also claims counsel was ineffective for failing to alert him to the availability of assistance from the Haitian consulate. (DE#1:7-8). According to the petitioner, it was through his embassy he could have obtained legal assistance and fair treatment. He faults counsel for failing to raise this issue in a suppression motion. However, when the petitioner made this same argument to the state collateral court in his Rule 3.850 proceeding, relief was denied for the following reasons:

---

[8]<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

> Counsel was not ineffective on this ground as a violation of the Vienna Convention on Consular Relations does not constitute a basis for suppression of a criminal defendant's statement to police that otherwise complies with the requirements of <u>Miranda</u>. <u>United States of America v. Jimenez-Nava</u>, 243 F.3d 192 (5th Cir 2001); <u>Conde v. State</u>, 860 So. 2d 930 (Fla. 2003). The defendant's motion based on this ground two (2) is hereby denied without an evidentiary hearing.

(DE#8:Ex.K:2).

Article 36 of the Vienna Convention provides that "when a national of one country is detained by authorities in another, the authorities must notify the consular officers of the detainee's home country if the detainee so requests." However, the Supreme Court has recognized that "... Article 36 has nothing to do with searches or interrogations and, indeed, does not guarantee defendants any assistance at all. It secures for foreign nationals only the right to have their consulate *informed* of their arrest or detention - not to have their consulate intervene" in their judicial proceedings. <u>Sanchez-Llamas v. Oregon</u>, 548 U.S. __, 126 S.Ct. 2669 (2006).

In addition, a private party has no standing to enforce the consular notification obligation of the Convention. <u>Breard v. Greene</u>, 523 U.S. 371 (1998)(Vienna Convention does not confer a right to set aside a criminal conviction and sentence for violation of consular notification provisions); <u>Republic of Paraguay v. Allen</u>, 949 F.Supp. 1269 (E.D. Va. 1996)(private party could not seek redress for failure to provide him with access to consular officials). Because the Convention did not create constitutional rights, <u>Faulder v. Johnson</u>, 81 F.3d 515 (5 Cir. 1996), <u>citing United States v. Valenzuela-Bernal</u>, 458 U.S. 858 (1982); <u>United States v. Holland</u>, 876 F.2d 1533 (11 Cir. 1989), a claimed violation

18

will not support a motion to suppress evidence. <u>Sanchez-Llamas</u>, <u>supra</u>.

Finally, under the facts of this case, the petitioner has failed to establish that he suffered any actual prejudice when the consulate was not notified of his arrest, and instead simply asserts in conclusory fashion that consular officials could have assisted him in obtaining a fair trial. <u>See</u> <u>United States v. Arango-Chairez</u>, 875 F.Supp. 609 (D.Neb.), <u>aff'd</u> 66 F.3d 330 (8 Cir. 1995)(claim that Mexican consulate's assistance "may have been unusually helpful" because defendant could not read English or Spanish did not establish prejudice stemming from consular convention violation). Consequently, the state court's denial of relief on the petitioner's claim was in accord with these applicable federal authorities, so that result should not be disturbed here. <u>Williams v. Taylor</u>, <u>supra</u>.

In **claim three**, the petitioner asserts that his counsel labored under an actual conflict of interest. (DE#1:9).

In Florida, to prove an ineffectiveness claim premised on an alleged conflict of interest, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance. <u>Herring v. State</u>, 730 So.2d 1264 (Fla.1998). A lawyer suffers from an actual conflict only when he or she actively represents conflicting interests. <u>Id</u>. To demonstrate an actual conflict, a defendant must identify specific evidence in the record that suggests that his or her interests were impaired or compromised for the benefit of a lawyer or another party. <u>Id</u>.

Federal law also holds that a conflict of interest cannot be established through hypothesis or speculation, <u>United States v. Novaton</u>, 271 F.3d 968, 1010-1011 (11th Cir. 2001), <u>citing</u> <u>Cuyler v.</u>

Sullivan, 446 U.S. 335, 348 (1980), United States v. Medel, 592 F.2d 1305 (5 Cir. 1979), but rather requires a showing that counsel actively represented conflicting interests. United States v. Ard, 731 F.2d 718 (11 Cir. 1984); United States v. Panasuk, 693 F.2d 1078 (11 Cir. 1982); accord, United States v. Ettinger, 344 F.3d 1149, 1161 (11th Cir. 2003). A defendant who fails to show both an actual conflict and an adverse affect is not entitled to relief. United States v. Novaton, 271 F.3d 968, 1010 (11th Cir. 2001); Burden v. Zant, 24 F.3d 1298, 1305 (11th Cir. 1994).

A defendant claiming ineffective assistance by virtue of counsel's conflict of interest must establish two elements: first, that an actual conflict of interest existed, and second, that it "adversely affected" his counsel's representation. LoConte v. Dugger, 847 F.2d 745, 754 (11 Cir. 1988). The defendant must point to specific instances in the record to suggest an actual conflict or impairment of his interest. United States v. Khoury, 901 F.2d 948, 968 (11 Cir. 1990); Lightbourne v. Dugger, 829 F.2d 1012, 1023 (11 Cir.), cert. denied, 488 U.S. 934 (1988).

According to the petitioner, the prosecutor, Assistant State Attorney Leah Klein, failed to notify the court that she had a conflict of interest in prosecuting the petitioner because she had previously represented the petitioner in this matter. (DE#8:Ex.K:23). He claims that Klein and co-counsel Dava Tunis were initially court-appointed to represent the petitioner for almost two years during pretrial preparation arising from the charges that form the basis for this federal habeas proceeding. He claims that Klein visited with him at the jail wherein they discussed legal strategies and defenses, but then just prior to the commencement of trial, Klein became a state court prosecutor, and was assigned to prosecute his case.

In this case, testimony at the postconviction evidentiary hearing made it apparent that the quality of the petitioner's representation was not adversely affected. (DE#8:Ex.L-Transcript 3.850 Evidentiary Hearing). In fact, Klein testified that she was never employed as a public defender, and never interviewed or represented the petitioner. (<u>Id</u>.:6-7). Moreover, contrary to the petitioner's allegations, Klein testified she never accompanied the petitioner's counsel, Dava Tunis, to the local jail to visit the petitioner, and never worked on the petitioner's case with Tunis. (<u>Id</u>.:8). At the hearing, the petitioner, acting *pro se*, stated that the visiting log from the jail would refute Klein's testimony, but tacitly conceded he had done nothing to obtain these records. (<u>Id</u>.:9-10). The petitioner further acknowledged that at trial, he was represented by Attorney Furster and Attorney Betrate. (<u>Id</u>.:11-12).

Thereafter, the state court denied relief on the following finding:

> I find that the state has carried their burden of proving by convincing and persuasive sworn testimony that Ms. Klein has never been employed at the public defender's office, nor has she ever represented Mr. Clervil [petitioner].
>
> Furthermore, I believe Ms. Klein that she has never visited TGK [jail] or the Stockade where the defendant claims that sh had visited him along with now Judge Dava Tunis who was a public defender at the time representing Mr. Clervil.
>
> I have no reason to believe that there is not a second lawyer visiting Mr. Clervil; however, I have received credible and convincing testimony that Ms. Klein was not that person, and there may be someone that visited Mr.

>Clervil who may look like Ms. Klein, but it was
>not Ms. Klein, not this Ms. Klein.
>
>And, therefore, I am denying, Mr. Clervil, your
>motion on that ground.

(DE#8:Ex.L:20-21).

Under these circumstances, the state courts' rejection of this
claim was both factually reasonable and in accord with applicable
federal authorities. <u>Williams v. Taylor</u>, <u>supra</u>. From the testimony
presented at the evidentiary hearing, it is apparent that the
petitioner failed to meet his burden of showing an actual conflict
of interest, or that he suffered an actual impairment of his
interest as a result. For these reasons, federal relief is not
warranted on this claim. <u>Cuyler v. Sullivan</u>, <u>supra</u>.

In **claim four**, the petitioner asserts that he was denied an
evidentiary hearing to establish that the petitioner's interpreter
did not take an oath as required by Florida criminal procedures.
(DE#1:10). This claim, like claim one above, is unexhausted and
procedurally barred from review in this collateral proceeding as it
was never raised as a claim on direct appeal. Moreover, review of
state law is not proper in federal habeas proceedings. Under these
circumstances, the movant is entitled to no relief on this claim
arising from the court's failure to hold an evidentiary hearing.

In **claim five**, the petitioner asserts that he was denied
effective assistance of counsel, where his lawyer failed to properly
insure that the court interpreters were properly sworn in as Creole
interpreters. (DE#1:17). The petitioner claims counsel also needed
to insure that the Creole interpreters were available at all stages
of the trial proceedings. (<u>Id</u>.). According to the petitioner, the

22

interpreter was not properly sworn when she/he began the interpretations, and was absent during a portion of the trial, in violation of Fla. Stat. §90.606(3).

Some procedural irregularities, such as the one alleged here, do not present constitutional issues. See Costa v. Williams, 830 F. Supp. 223, 224-25 (S.D.N.Y. 1993). See also See Hou v. Walker, 1996 WL 684442, *3 (E.D.N.Y. 1996); Marquez v. Marshall, 1995 WL 232406, *4 (N.D.Cal. 1995). Any violations of state law in connection with the interpretation of the proceedings are matters for the state courts.[9] Consequently, petitioner's allegations concerning the interpreters' failure to take the required oaths at best states a state law claim not cognizable in federal habeas. Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also presented. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). The courts have also held that, upon a collateral attack, an unsworn interpreter is cloaked with the presumption of regularity, which permits a court to assume that an official or person acting under oath of office will not do anything contrary to his or her official duty. See Hou, 1996 WL 684442, *3.

Further, even if reviewed on the merits, the petitioner is not

_____

[9]See Fla.Stat. §90.606 (West Supp. 1996) which provides in pertinent part as follows:

   (1)(a) When a judge determines that a witness cannot hear or understand the English language, or cannot express himself or herself in English sufficiently to be understood, an interpreter who is duly qualified to interpret for the witness shall be sworn to do so.

        *           *           *

   (3) An interpreter shall take an oath that he or she will make a true interpretation of the questions asked and the answers given and that the interpreter will make a true translation into English of any writing which he or she is required by his or her duties to decipher or translate.

entitled to relief. In its order denying the petitioner's Rule 3.850 motion, the trial court stated as follows:

> Defendant's allegation in ground five (5) that failed to swear the official court interpreter is refuted by the record (*see* State's Exhibit #2), but even were it true, does constitute fundamental error and is therefore barred unless there is an allegation of bias on the part of the interpreter which there is not. <u>Rodriguez v. State</u>, 664 So.2d 1077 (Fla. 3rd DCA 1996). Therefore, the Defendant's motion as to this allegation is denied without an evidentiary hearing.
>
> The Defendant also alleges in ground five (5) that an interpreter was not present at all stages of trial. The Defendant was present with an official court interpreter during the entire trial. (see attached State's Exhibit #2).

(DE#8:Ex.K:2). The record supports the trial court's ruling. First, contrary to the petitioner's claim, review of the trial transcript reveals that the official court interpreter, Joseph Salomon, was present for all stages of the trial. However, even if this Court were to assume for purposes of this federal proceeding that the interpreter had not been properly sworn, the trial transcript further reflects that no serious translation errors were made by the court interpreter, and the petitioner was able to hear, understand and respond appropriately to questions posed by the prosecutor and defense counsel through the interpreter. <u>See e.g.</u>, Trial Transcripts attached as an Appendix to the state's response herein.

The petitioner also argued in his Rule 3.850 motion that an interpreter was not present during a "pre-trial" hearing, and attaches an excerpt of that transcript in support of his claim. He claims the absence of an interpreter caused him to communicate with counsel in "high school French." However, in the state forum, it was established by the respondent, who attached a complete copy of the transcript, that in fact, it was a post-trial hearing on

24

counsel's request for a continuance of the sentencing proceeding. (DE#8:App.1:Ex.3). This is of no import as it did not attack the constitutionality of his conviction or sentencing.

Thus, the trial court's finding in the Rule 3.850 proceeding that petitioner failed to come forward with affirmative evidence to rebut that presumption is clearly proper.[10] As stated above, the interpreter's translation did not hinder petitioner's comprehension and ability to respond. The record does not indicate that the petitioner signaled to the court and/or trial counsel during the trial that the interpreter's translation was inaccurate or not understandable. The claim regarding the lack of an interpreter, and the lack of evidence that one was sworn in, is, therefore, meritless. <u>See generally</u> <u>United States v. Joshi</u>, 896 F.2d 1303, 1309-11 (11 Cir. 1990)(holding that a reviewing court is unlikely to find that a defendant received a fundamentally unfair trial due to an inadequate translation in the absence of contemporaneous objections to the quality of the interpretation); <u>Valladares v. United States</u>, 871 F.2d 1564, 1566 & n.5 (11 Cir. 1989)(same).

Accordingly, the trial court's determination that the petitioner was not entitled to postconviction relief on this claim, one, which decision was affirmed on appeal, was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the

---

[10]As is evident from the record, the petitioner in his appeal following the denial of his Rule 3.850 motion, conceded that this claim was refuted by the record. (DE#8:Ex.O:2). He, therefore, did not challenge the court's denial of the claim on direct appeal. The claim, arguably is therefore unexhausted and prospectively procedurally barred from review in this habeas proceeding.

state court proceeding.[11] Relief must therefore be denied pursuant to 28 U.S.C. §2254(d). <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).

In **claim six**, the petitioner asserts that his due process rights were violated during *voir dire*, where prospective jurors responses to questions were prejudicial, impartial, and untruthful. (DE#1:18).

In its order denying the petitioner's Rule 3.850 motion, the trial court stated as follows:

> Defendant claims that voir dire pool was not properly sworn and that failure to object is proof of ineffective assistance of counsel. Again, Defendant fails to demonstrate prejudice thus, the Motion fails on this ground. <u>Hayes v. State</u>, 855 So.2d 144 (Fla. 4th DCA 2003).[12]

The substance of the petitioner's argument in support of this

---

[11]The appellate court's decision, affirming the denial of Rodriguez's Rule 3.850 motion, constitutes an "adjudication on the merits," and is thus entitled to deference under the Antiterrorism and Effective Death Penalty Act (AEDPA) for purposes of subsequent federal habeas corpus review, although the state court did not issue an opinion providing any discussion with respect to the claim. <u>Wright v. Secretary for Dept. of Corrections</u>,278 F.3d 1245 (11 Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003).

[12]In <u>Hayes</u>, the Fourth District Court of Appeal held that postconviction relief on petitioner's ineffective assistance of counsel claim based on counsel's failure to object when the trial court judge failed to place prospective jurors under oath prior to voir dire was legally insufficient warrant further proceedings, where petitioner failed to preclude possibility that venire was placed under oath in jury assembly room and petitioner failed show that results of proceedings would have been different or that an unsworn juror lied during voir dire, affecting jury composition. <u>See</u> <u>Hayes v. State</u>, 855 So.2d 144, 145 (Fla. 4th DCA 2003). <u>see also</u>, <u>Davis v. State</u>, 848 So.2d 418, 419 (Fla. 2d DCA 2003)("Previously, this court has recognized that in many trial courts the preliminary oath is administered in the jury assembly room or at some other location when all of the prospective jurors for the several trials to be held in the courthouse on that day are assembled."); <u>Lott v. State</u>, 826 So.2d 457, 458 (Fla. 1st DCA 2002)("In many Florida courts, the preliminary oath is administered to the venire in a jury assembly room, before the jurors are questioned about their legal qualifications and before they are divided into smaller groups for questioning in individual cases.").

claim has been often repeated by both federal habeas corpus applicants and Florida defendants in recent years, and has met with virtually no success, for reasons that were explained in a decision of this court as follow:

> The oath in controversy here is the preliminary oath prospective jurors are required to take to ensure that they will give truthful answers to questions regarding their qualifications. See Fla.R.Crim.P. 3.300(a). Petitioner does not contend that the judge neglected to administer the trial oath to the jurors once they had been selected to serve in his case. See Fla.R.Crim.P. 3.360. "In many Florida courts, the preliminary oath is administered to the venire in a jury assembly room, before the jurors are questioned about their legal qualifications and before they are divided into smaller groups for questioning in individual cases." Lott v. Shane, 826 So.2d 457, 458 (Fla. 1st DCA 2002); see also, Martin v. State, 898 So.2d 1036, 2005 Fla.App. LEXIS 3219, at 3 (Fla. 5th DCA 2005)('In light of the practice of taking prospective jurors' oaths outside the courtroom, it is pure speculation on [petitioner']s part to allege that they were never sworn.')

Munoz-Paramo v. State, 2005 WL 2456083 (S.D. Fla. July 5, 2002), at n.2; accord, Palmer v. McDonough, 2006 WL 1382094 (N.D. Fla. May 19, 2006); see also, Pena v. State, 829 So.2d 289, 293 (Fla. 5 DCA 2002)(holding that fundamental error is not established by a record that fails to demonstrate, one way or the other, whether the venire received the oath); Hayes v. State, 855 So.2d 144 (Fla. 4 DCA 2003)(same).

Here, then, the absence of a record indication that the venire was sworn is essentially meaningless, in the light of the common practice recognized by the foregoing authorities of administering

27

the preliminary oath in the jury assembly room. Moreover, even if counsel's failure to establish on the record that the oath was given to the venire as a whole could be construed as error, the petitioner makes no showing whatever that he would have been acquitted but for that error. Accordingly, since he has failed to establish that counsel's alleged omission caused him to suffer actual prejudice, his claim of ineffective assistance must fail. See Palmer v. McDonough, supra ("Even assuming arguendo deficient performance by defense counsel [in failing to challenge the venire as unsworn], Petitioner has not shown that a reasonable probability exists that the outcome of the  case would have been different ...".). Under these circumstances, the rejection of this claim by the trial court and its subsequent affirmance on appeal should not be disturbed here. Williams v. Taylor, supra.

As to the petitioner's argument that counsel failed to object when juror Gibson purportedly answered untruthfully, he explains in his memorandum that Gibson indicated that his brother is a retired police officer, and that his son also works in law enforcement. According to the petitioner, this shows bias on Gibson's part. Likewise, the petitioner claims juror Davis' statement that his mother is a police officer and his uncle is in law enforcement also demonstrates bias. The petitioner next claims that juror Garcia's bias arises from the fact that he worked as a security officer for the City of Miami for four years. Lastly, he asserts that Andre, a licensed registered nurse, is also biased because she interacts daily with local law enforcement, and has a nephew in Canada who works in law enforcement.

However, no showing was made either in the state forum or in this habeas proceeding that any alleged bias adversely affected the proceedings. To the contrary, in response to defense counsel's

28

questions, Gibson stated that she could be "absolutely" fair after listening to all of the evidence. (T.239). Davis never indicated that he could not follow the law or be fair and impartial. Likewise, Garcia stated that her job as a store security guard would not affect her ability to be fair and impartial. (T.165-66). Finally, Andre also stated that her interactions with law enforcement would not adversely affect her ability to sit as a juror. (T.140-41,143). Thus, the petitioner's contention that he suffered prejudice arising from counsel's failure to insure that the venire was properly administered the oath or that any of the prospective jurors were biased and thus could not follow the law or be impartial must fail.[13] Under these circumstances, the state court's rejection of this claim should not be disturbed here. <u>Williams v. Taylor</u>, <u>supra</u>.

In **claims seven and eight**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to utilize the petitioner's peremptory challenges to strike certain jurors, improperly limited cross-examination of certain witnesses, and failed to present a heat of passion defense. (DE#1:18).

The petitioner first asserts that counsel was ineffective for failing to utilize the petitioner's peremptory challenges to strike certain jurors which resulted in the selection of a biased and non-impartial jury. In the state forum, the petitioner argued that several potential jurors who showed bias or were partial to the prosecutor and/or law enforcement should have been stricken by counsel during the jury selection process. (DE#8:Ex.H:45). Again, the petition claims that jurors Gibson, Davis, Garcia, and Andre

---

[13]In fact, in the state proceedings, the prosecutor attached an affidavit from Anders Madsen, the director of jury pools, indicating that the oath is administered to all prospective jurors as a group by deputy clerk. (DE#8:App.I.Ex.4).

all demonstrated bias because they favored law enforcement and the prosecutor. (Id.).  As previously discussed in relation to claim six above, no showing has been made either in the state forum or in this habeas proceeding that any alleged bias adversely affected the proceedings. To the contrary, the jurors acknowledged they were able to follow the court's instructions to arrive a just verdict. No showing of bias has been established. Thus, the petitioner's contention that he suffered prejudice arising from counsel's failure to exercise remaining peremptory challenges against these jurors must fail. Under these circumstances, the state court's rejection of this claim should not be disturbed here. Williams v. Taylor, supra.

The petitioner next asserts that counsel was ineffective for improperly limiting cross-examination of certain witnesses. According to the petitioner, counsel limited the number of questions he asked certain witnesses, ranging from not asking any questions of some, to extensively questioning others. (DE#8:Ex.H:48).

In its order denying the petitioner's Rule 3.850 motion, the trial court stated that it had examined the trial transcript and found that "counsel's performance did not fall below an 'objective standard of reasonableness under prevailing norms.'" (DE#8:Ex.K:2)(citations omitted). Moreover, the trial court further noted that the petitioner had failed to establish how he was prejudiced from the alleged deficiency, and therefore denied the claim without an evidentiary hearing. (Id.).

The decision to cross-examine a witness and the manner in which cross-examination is conducted are tactical decisions "well within the discretion of a defense attorney." Fugate v. Head, 261 F.3d 1206, 1219 (11 Cir. 2001)(quoting Messer v. Kemp, 760 F.2d 1080,

1090 (11 Cir. 1985)). Trial counsel is not ineffective simply for failing to elicit other testimony from those that testified. Id. at 1220. Rather, in order to establish the prejudice prong of Strickland, a petitioner must show at least one "specific instance where cross-examination arguably could have affected the outcome of either the guilt or sentencing phase of the trial."[14] Id. at 1219 (quoting Messer, 760 F.2d at1090).

Review of the record as a whole reveals that trial counsel strategically cross-examined some of the state's key witnesses at length, but as to others, he asked no questions whatsoever. (See Cross-Examination:T.394-401, 416-18, 443-454, 466-78, 519-33, 550-51, 571-75, 615, 648-656, 741). Trial counsel's strategy in this regard should not be second-guessed in this collateral proceeding. He attempted to demonstrate to the jury that the petitioner loved the victim, but they embarked on an odyssey where the victim was unfaithful and the resulting death occurred without premeditation. It is clear from review of the record as a whole that counsel conducted thorough examination of the state's eyewitnesses and Detective John Allickson, the detective who searched the petitioner's vehicle. Such tactical or strategic choices by counsel cannot support a collateral claim of ineffective assistance. McNeal v. Wainwright, 722 F.2d 674 (11 Cir. 1984); United States v. Costa, 691 F.2d 1358 (11 Cir. 1982).

Even if such a decision in retrospect appears incorrect, it can constitute ineffective assistance only "if it was so patently unreasonable that no attorney would have chosen it," Adams v.

---

[14]The performance prong of an ineffective assistance claim need not be discussed when no prejudice has been established.  See Brown v. Head, 272 F.3d 1308, 1313 (11 Cir. 2001), cert. denied, 537 U.S. 978 (2002).

Wainwright, 709 F.2d 1443, 1445 (11 Cir.), cert. denied, 464 U.S. 1663 (1984), or if the petitioner can demonstrate a "reasonable probability that the verdict [otherwise] would have been different." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986). In this case, no such showing can be made, given the evidence adduced at trial which reveals as follows. On July 1, 1998, the victim, Tierney Ely, also called "Kokot," rode to work with coworkers Marcelin Jean and Vyrose Volcy because her car was being repaired. (T.371). Volcy saw the petitioner follow them to the victim's job. (T.374-75). When Volvy, Jean, and the victim got out of the car, the petitioner also exited his vehicle, calling out to the victim. (T.382-388). The petitioner approached the victim, and when the victim told him to leave her alone, that she did not want to talk with him, the petitioner reached under his shirt, pulled out a gun, and then shot the victim in the back. (T.390, 511-15). Both Volvy and Jean then observed the petitioner shoot the victim an additional three times. (T.390-391, 511-15).

Bernadette Louis, a receptionist at the police station testified that the petitioner arrived at the station and started telling her that his "woman" had left him, taken all his money, and then sent some men to kill him. (T.439). The petitioner explained he showed up at the woman's job the following day and killed her. (T.440-41). The petitioner also explained he had killed the victim with a gun which was in his car, and had asked a friend to drive him to the station so that he could turn himself in. (T.441-443).

Detective John Allickson responded to the scene of the murder. (T.454-55). As the detective walked out of the station with the petitioner, the petitioner made some admissions which were videotaped by television news cameras, and played for the jury. (T.465-66,693). Detective Allickson ultimately searched the

petitioner's vehicle, recovering the firearm used to kill the victim. (T.455-56). Officer Angel Escobar testified that the petitioner stated that he was sorry that the victim made him do the "wrong" thing. (T.549).

The petitioner testified on his own behalf at trial. (T.657). He stated that he and the victim were lovers, and that during the course of their relationship, he supported the victim and her children. (T.663). The petitioner, however, caught the victim in bed with other men on multiple occasions, causing a strain on their relationship, with the victim moving out of their residence one month prior to the shooting. (T.660-672). According to the petitioner, on the day of the shooting, the victim verbally humiliated him, causing him to lose control and shoot her. (T.686-87). After he realized what he had done, he went home to shoot himself, but couldn't do so, and therefore turned himself into police, taking a taxi to the police station. (T.688-90). Thereafter, the petitioner confessed to the receptionist, as well as, to the detectives. (T.691).

Given the evidence adduced at trial, the petitioner has failed to establish how further cross-examination by counsel would have altered the guilt phase portion of the trial. Thus, he cannot establish prejudice pursuant to Strickland. In conclusion, it is clear from the record when viewed as a whole that the petitioner received vigorous and able representation more than adequate under the Sixth Amendment standard. See Strickland v. Washington, 466 U.S. 668 (1984). The petitioner has failed to demonstrate that he was deprived of constitutionally effective assistance of counsel for any of the reasons alleged above. The rejection of the petitioner's motion for postconviction relief by the state trial and appellate courts, where the identical claims of ineffective assistance of

33

trial counsel presented in this federal proceeding were raised, see Wagner v. State, 883 So. 2d 284 (Fla. 3d DCA 2004), is not in conflict with clearly established federal law or based on an unreasonable determination of the facts, and the state courts' results should therefore not be disturbed. 28 U.S.C. §2254(d)(1); Williams v. Taylor, supra.

The petitioner finally asserts in support of these claims that counsel was ineffective for failing to investigate the evidence and pursue a heat of passion defense. (DE#1:19). According to the petitioner, counsel should have further investigated, and otherwise elicited testimony, as well as, hired experts to testify how the petitioner's "intense love of the alleged victim and her rejection" of him, as well as, her disparaging remarks provoked and humiliated him, causing the petitioner to "lose control of himself in a passionate confrontation ... in the heat of passion." (DE#8:Ex.K:51-52). Apparently, the petitioner intends to argue that counsel should have put such a defense before the jury on the strength of his statement in his confession that he killed the victim when he lost control after her humiliating statements.

There are a number of problems with the petitioner's position. Aside from the fact, as discussed above, that the evidence was ample to support a conviction of first degree murder, the "heat of passion" defense in Florida is available only if the defendant can show that his act of killing was engendered by sufficient provocation. "[T]he provocation upon which he acts must be reasonable and sufficient, and such as would ordinarily and naturally excite a man to violent anger, and cause him to lose control of his passion." Olds v. State, 44 Fla. 452, 33 So. 296 (1902). Even if it were true that the victim's comments and her declarations that she was sexually involved with other men were

34

humiliating, such statements by the petitioner would not have been so egregious as to "ordinarily and naturally excite a man to violent anger," to the point where he would shoot her multiple times.

Second, the "heat of passion" defense is applicable only where the evidence shows that the defendant acted in a moment of rage, without time to cool off or reflect on his behavior, such that the element of premeditation is negated. Lusk v. State, 498 So.2d 902 (Fla. 1987); compare, Tien Wang v. State, 426 So.2d 1004 (Fla. 3 DCA), rev.denied, 434 So.2d 889 (Fla. 1983). Premeditation can be deduced from factual circumstances such as the manner of the killing and the nature and kind of wounds inflicted, Welty v. State, 402 So.2d 1159 (Fla. 1981); Larry v. State, 104 So.2d 352 (Fla. 1958), and may occur a matter of moments before the murderous act, even after a battery has begun. Buford v. State, 403 So.2d 943 (Fla. 1981).

In this case, aside from the evidence of the petitioner's pursuit of the vehicle occupied by the decedent and her coworkers, the medical examiner who performed the autopsy revealed that the victim was shot a total of four times. According to the petitioner's own confession, he went up to the victim, and when she refused to listen to him, she turned to walk away, and that's when he shot her in the back. He then shot her an additional three times near the ear. Under these circumstances, it is apparent that the "heat of passion" defense the petitioner now proposes was not available to him, Demurjian v. State, 557 So.2d 642, 644 (Fla. 4 DCA 1990)(multiple stab wounds warranted inference of premeditation, so absence of "heat of passion" argument not error), and counsel did not perform ineffectively in failing to present it to the jury.

To the extent he attempts to relitigate arguments previously

raised in this habeas proceeding as part of this claim, those arguments should again be denied for the reasons previously expressed in this Report.[15]

In **claim nine**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer ineffectively moved for a judgment of acquittal. (DE#1:20). According to the petitioner, the arguments in support thereof were "inadequate," and "barebones." The petitioner maintains that there was insufficient evidence to support premeditation and no proper argument put forth regarding the heat of passion defense. (DE#8:Ex.K:57-59).

In Florida, the courts do not grant a motion for judgment of acquittal unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law. Lynch v. State, 293 So.2d 44, 45 (Fla. 1974)(stating that "[w]here there is room for a difference of opinion between reasonable men as to the proof or facts from which an ultimate fact is sought to be established, or where there is room for such differences as to the inferences which might be drawn from conceded facts, the court should submit the case to the jury for their finding, as it is their conclusion, in such cases, that should prevail and not primarily the views of the judge."). A defendant, in moving for a judgment of acquittal, admits not only the facts stated in the evidence admitted at trial, but also admits every

---

[15]Moreover, if the petitioner means to argue that counsel should have cross-examined all witnesses to establish the heat of passion defense, retain an expert in this regard, and otherwise meet with the petitioner to go over the strategy more effectively, no showing has been made here that any of these alleged deficiencies individually or cumulatively, affected the petitioner's trial. Thus, the petitioner has failed to establish prejudice under Strickland and his conclusory allegations in this regard, which were denied by the trial court and affirmed on appeal, should not be disturbed here. Williams v. Taylor, supra.

conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence. Id.

The record reveals that after the state had rested and again at the close of the defense case, defense counsel moved for a judgment of acquittal, arguing that the state had not met its burden in that it failed to prove a *prima facie* case on both counts of the Indictment. See T.650-52,761. The trial court denied the motions. Id.:656,766. Even if defense counsel's performance regarding the motions for judgment of acquittal could in any way be deemed deficient in that trial counsel did not raise the specific arguments now-asserted by the petitioner in this federal proceeding, the petitioner is not entitled to relief because he has failed to satisfy the prejudice-prong of *Strickland*. Based upon the evidence admitted at trial and applicable Florida law, the petitioner was not entitled to a judgment of acquittal by the trial court. As indicated herein, the evidence taken in conjunction with the petitioner's own statements to the police receptionist and the police was more than sufficient to support petitioner's convictions. Counsel's performance can, therefore, not be deemed constitutionally ineffective in this respect. See Jackson v. Virginia, 443 U.S. 307 (1979); Smith v. White, 815 F.2d 1401 (11 Cir. 1987). Thus, the state court's denial of this claim on this same reasoning was neither contrary to nor an unreasonable application of federal constitutional principles and should not be disturbed here. Williams v. Taylor, supra.

In **claim ten**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer ineffectively moved for a new trial. (DE#1:20). According to the petitioner, his lawyer failed to properly move for a new trial, merely asserting in a general fashion that the verdict was contrary to the weight of the

evidence.

In Florida, a motion for new trial pursuant to Fla.R.Crim.P. 3.600(a)(2) enables the trial judge to weigh the evidence and determine the credibility of witnesses so as to act, in effect, as an additional juror. See Tibbs v. State, 397 So.2d 1120 (Fla. 1981)(the court distinguished between the sufficiency of the evidence, on the one hand, and the weight and credibility of the evidence, on the other), aff'd, 457 U.S. 31 (1982); State v. Lalor, 842 So.2d 217(Fla. 5 DCA 2003). If the trial judge determines that the verdict of guilty is against the weight of the evidence, which is not a determination that the evidence was legally insufficient so as to require an acquittal, the trial judge's disagreement with the jury's weighing of the evidence allows the judge to order a new trial. Tibbs, 397 So.2d at 1123.

Here defense counsel did file a written motion for new trial, and raised various arguments in support of the motion. (DE#8:Ex.K-Rule 3.850-App.J; DE#8:Ex.X). According to the petitioner, however, counsel should have argued that the prosecutor was operating under a conflict of interest, and that the prosecution had no evidence to support premeditation. Even if defense counsel's performance could in any way be viewed as deficient regarding the motion for new trial, review of the testimony and record leaves no serious doubt about whether the subject crimes were in fact committed by the petitioner. Moreover, even counsel had raised the subject of the prosecutor's alleged conflict in the motion, as previously discussed in this Report, no showing of a conflict was proven either in the state forum or in this federal proceeding. Accordingly, the petitioner was not entitled to a new trial. The petitioner has not demonstrated that he was prejudiced by counsel's performance and therefore has failed to show that he received constitutionally

38

ineffective assistance of counsel with regard to his motion for new trial.

Lastly, to the extent the petitioner appears to argue that he is entitled to a federal evidentiary hearing on his claims, that claim also warrants no habeas corpus relief here. If a habeas corpus petitioner "alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of the claim." Holmes v. United States, 876 F.2d 1545, 1552 (11 Cir. 1989), quoting Slicker v. Wainwright, 809 F.2d 768, 770 (11 Cir. 1987). However, no hearing is required where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous. Holmes, supra at 1553. Here, for the reasons which have been discussed, the petitioner's claims are all affirmatively contradicted by the existing record, so no federal hearing is necessary or warranted.

<u>Conclusion</u>

For the foregoing reasons, it is recommended that this petition for habeas corpus relief be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 1st day of October, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

```
cc:  Jocelyn Clervil, Pro Se
     DC# M-43996
     Graceville Correctional Facility
     5168 Ezell Road
     Graceville, FL 32440

     Jerome Smiley, Jr., Ass't Atty Gen'l
     Department of Legal Affairs
     444 Brickell Avenue
     Suite 650
     Miami, FL 33131
```